IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEVIN MCGOUGH,<br><br>Petitioner,<br><br>vs.<br><br>WILLIAM A. LEE, SUPERINTENDENT,<br><br>Respondent. | No. 9:17-cv-00847-JKS<br><br>MEMORANDUM DECISION |

Kevin D. McGough, a state prisoner proceeding *pro se* filed a Petition for Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254 ("Petition"). Docket No. 1. McGough is in custody of the New York Department of Corrections and incarcerated at the Eastern New York Correctional facility located in Ulster County, New York. Respondent answered at Docket No. 6, and Petitioner replied through counsel at Docket No. 8.

## I. BACKGROUND AND PRIOR PROCEEDINGS

On December 9, 2011, a Schenectady County jury found McGough guilty of five counts of second-degree criminal possession of a weapon,[1] including criminal possession of a .357 caliber revolver, a Ruger 380 semi-automatic, and a Kel-tech 9mm semi-automatic pistol. The jury also found McGough guilty of three counts of fourth-degree criminal possession of stolen property,[2] including possession of a Kel-tech 9mm semi-automatic rifle, a Kel-tech 9mm semi-

---

[1] A violation of N.Y. PENAL § 265.03(1)(b), requires (1) "with intent to use the same unlawfully against another, such person: . . . (b) possesses a loaded firearm and such possession occurs outside of the home or place of business." This Class C violent felony carries a minimum sentence of five to maximum sentence of 25 years of incarceration. Petitioner's actual sentence was 15 years incarceration plus 5 years of supervised release.
[2] A violation of N.Y. PENAL § 165.45(4), requires "knowing possession of stolen property, with intent to benefit himself or a person other than an owner thereof or to impede the recovery by an owner thereof, and when: . . . (4) the property consists of one or more firearms, rifles and shotguns, as such terms are defined in section 265.00 of this chapter." This Class E felony carries a minimum of one and one-half

automatic pistol, and an Ithaca 12 gauge shotgun. Additionally, the jury convicted McGough of one count of third-degree criminal possession of a weapon,[3] and one count of unlawful possession of marijuana.[4] On direct appeal of his conviction, the New York Supreme Court, Appellate Division laid out the following facts underlying the charges against McGough and the evidence presented at trial:

> In September 2010, defendant allegedly fired a gun in the direction of a vehicle. Shortly thereafter, the City of Schenectady Police Department executed a warrant to search defendant's residence in the City of Schenectady, Schenectady County. Defendant's father, mother, sister and brother were in the house during the search, and defendant was found lying on the floor in a stair landing, next to a laundry basket that contained a disassembled semiautomatic pistol. Additional weapons, ammunition and other contraband were "strewn throughout the [residence]." In defendant's bedroom, the search team found a semiautomatic rifle with a foldable stock, a loaded high-capacity magazine that fit the rifle, several loaded and unloaded magazines that fit the pistol found in the basket, handgun and shotgun ammunition, a bulletproof vest, and marihuana. In another bedroom —allegedly that of defendant's younger brother— the team found a loaded .380 semiautomatic pistol, a loaded .357 magnum revolver and several long guns, shotguns and rifles. Additional rifles were found in the living room, and more firearms and a bulletproof vest with projectile holes in it were found in the basement. Several of the weapons proved to be stolen.

*People v. McGough,* 998 N.Y.S.2d 232 (N.Y. App. Div. 2014). The trial court subsequently sentenced McGough to a total of fifteen-years of incarceration plus five years of post-release

---

years to maximum of four years of incarceration.
[3] In violation of N.Y. PENAL § 265.02(8), which requires "[s]uch person [to] possess[] a large capacity ammunition feeding device." This class D violent felony carries a minimum of two years to maximum of 7 years of incarceration. Petitioner's actual sentence was 7 years of incarceration and three years of supervised release.
[4] A violation of N.Y. PENAL § 221.15, a Class A misdemeanor, requires "knowingly and unlawfully possess one or more preparations, compounds, mixtures or substances containing marihuana and the preparations, compounds, mixtures or substances are of an aggregate weight of more than two ounces."

supervision, the sentence for each conviction was to be served concurrently. Docket No. 7 at 51–52.

Through counsel, Petitioner appealed his conviction arguing among other things, that the trial court violated his constitutional right to a public trial when it closed the courtroom during the testimony of one of the prosecution's witnesses and denied Petitioner's request to permit his family and friends to remain in the courtroom. On November 26, 2014, the Appellate Division unanimously affirmed the trial court's judgment against McGough in a reasoned opinion. *People v. McGough,* 998 N.Y.S.2d 232 (N.Y. App. Div. 2014). On February 18, 2015, the New York Court of Appeals summarily denied Petitioner's request for leave to appeal. *People v. McGough,* 28 N.E.3d 44 (N.Y. 2015).

Proceeding *pro se*, Petitioner moved to vacate the judgment pursuant to New York Criminal Procedure Law § 440.10, arguing that his trial counsel, Stephen Rockmacher, failed to effectively assist him during trial. Specifically, McGough complained that Rockmacher failed to investigate the exculpatory statement Petitioner's father made to the police with respect to ownership of the weapons found during the search on October 1, 2010. The County Court granted Petitioner a hearing on this motion, where Petitioner's mother, father, and Rockmacher testified before the court. On May 2, 2017, the Schenectady County Court denied Petitioner's motion in an unpublished reasoned opinion. Docket No. 7-2 at 91–93. On June 29, 2017, the Appellate Division summarily denied Petitioner's motion for leave to appeal.[5] Docket No. 7-2 at 119.

---

[5] McGough's claim for ineffective assistance of counsel was fully exhausted at that point because "New York does not provide for a further appeal from such an order." *Jones v. Artus*, 615 F. Supp. 2d 77, 80 (W.D.N.Y. 2009) (citing N.Y. Crim. Proc. § 450.90(1)).

On April 4, 2016, this Court through a previously assigned Judge dismissed McGough's first Petition for a Writ of Habeas Corpus without prejudice because McGough had failed to exhaust available state court remedies as to his ineffective assistance of counsel claim. Docket No. 1 at 20–26, Case No. 9:16-cv-0347. McGough now timely renews his petition for a Writ of Habeas Corpus to this Court. Docket No. 1.

## II.  GROUNDS FOR RELIEF

In his *pro se* Petition before this Court, McGough raises the following two grounds for relief: (1) he was denied his constitutional right to effective assistance of counsel and a fair trial when his attorney, Rockmacher, failed to investigate and present a witness with exculpatory testimony; and (2) he was denied his constitutional right to public trial when the trial court excluded Petitioner's family and friends from the courtroom during the testimony of one of the prosecution's witnesses. Docket No. 1 at 8–14.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor,* 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer,* 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of improper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 562 U.S. 216, 221–22 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g., Estell v. McGuire,* 502 U.S. 62, 67–68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona,* 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Ylst v. Nunnemaker,* 501 U.S. 797, 804 (1991); *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir. 2000). A summary denial is an adjudication on the merits and entitled to the same AEDPA deference that it would give a reasoned opinion of the state court. *Harrington v. Richter,* 562 U.S. 86, 99 (2011) (rejecting the argument that a summary disposition

was not entitled to § 2254(d) deference); *Jimenez v. Walker,* 458 F.3d 130, 145-46 (2d Cir. 2006). Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

Petitioner argues that the New York State Courts unreasonably applied Supreme Court law—namely *Waller v. Georgia,* with respect to closure of trial and *Strickland v. Washington*, with respect to ineffective assistance of counsel claim— in violation of § 2254(d)(1). *Waller v. Georgia,* 467 U.S.39 (1984); *Strickland v. Washington*, 466 U.S. 668 (1984).

### a. Right to Public Trial

During trial, the court closed the proceedings to the public during the examination of T.V., one of Respondent's witnesses and a minor. Docket No. 7-4 (Hr'g Tr.) 54:5–8. T.V. was incarcerated in Schenectady County Jail pending criminal charges and was released through a plea agreement, which included a promise to testify against Petitioner. Docket No. 7-4 (Hr'g Tr.) at 45:2–14. Outside the presence of the jury, the trial court held an adversarial hearing in order to determine whether closure of the court was necessary during T.V.'s testimony and to what extent. Docket No. 7-4 (Hr'g Tr.) at 43:14–60:20. During the hearing on request for closure, T.V. testified that "after he agreed to testify in [Petitioner's] trial, he had been threatened and involved in physical altercations on several occasions with individuals who called him a 'snitch.'" *People v. McGough,* 998 N.Y.S.2d 232, 236 (N.Y. App. Div. 2014). These events occurred both at T.V.'s school and in public in the Schenectady community and were perpetrated by local residents, although not anyone T.V. identified as the family or friends of Petitioner. Docket No.

7-4 (Hr'g Tr.) 51:19–52:19. During the hearing, T.V. also testified that because of these altercations, he was considering not testifying in the *McGough* case, which would have violated his plea agreement and subjected him to trial with respect to his own criminal charges and the possibility of incarceration in state prison. Docket No. 7-4 (Hr'g Tr.) 52:16–54:2. Moreover, T.V., a minor himself, testified that he was fearful of testifying in a public court room both for his own safety and that of his younger brother, because his public testimony would increase his reputation as a snitch in a small community. Docket No. 7-4 (Hr'g Tr.) 54:24–54:10. He also testified that he would not be afraid to testify in a closed courtroom. Docket No. 7-4 (Hr'g Tr.) 53:21–54:2. T.V's testimony was limited to a specific and narrow topic, and he was the only witness available to testify to seeing McGough with a handgun on September 20th. Docket No. 7-4 (Hr'g Tr.) 20:22–21:25.

Petitioner contends that his right to public trial was violated by the courtroom closure during T.V.'s testimony. Specifically, Petitioner asserts that the closure was broader than necessary, because it excluded from court Petitioner's mother who was acting as his advisor and was needed to explain the proceedings to McGough. Docket No. 8 at 3-4. Petitioner further contends that because there was no evidence that his mother, in particular, posed a threat to the witness she need not be excluded from T.V.'s testimony. *Id*. McGough also argues that the court failed to adequately support its decision to close the court because there was no evidence that the people threatening the witness were affiliated with Petitioner, his family or friends; and to the extent that the court assumed a connection, it was unreasonable. Docket No. 8 at 3–4. Finally, Petitioner asserts that the trial court must consider alternatives to closure even if not offered by the parties, and that it failed to do so. Docket No. 8 at 2, 4.

7

Respondent opposes McGough's Petition asserting that the Appellate Division reasonably applied the factors set out in *Waller* —the correct rule—and therefore, this Court may only grant habeas relief if that ruling is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Docket No. 6-1 at 14 (quoting *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015)). Respondent also asserts that *Waller* sets out a general rule, and therefore under AEDPA deference, the state court has more leeway in reaching its decision. Docket No. 6-1 at 14–15. Further, Respondent asserts that "*Waller* does not demand a higher showing before excluding a defendant's friends and family" but only requires that the court create a record adequate to allow review of its consideration and rejection of reasonable alternatives. Docket 6-1 at 16. Finally, Respondent argues that the record is sufficiently clear for review and supports a finding that the trial court considered and rejected a narrower closure. Docket 6-1 at 16.

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. CONST., Amend. VI. The "public trial" clause applies to state prosecutions through the Fourteenth Amendment and therefore the Sixth Amendment entitles a defendant in a state criminal proceeding to a public trial. *Accord*, *e.g.*, *Presley v. Georgia*, 558 U.S. 209, 214–15 (2010) (per curiam); *Waller v. Georgia*, 467 U.S. 39, 48 (1984); *In re Oliver*, 333 U.S. 257, 273 (1948); *Gibbons v. Savage*, 555 F.3d 112, 115 (2d Cir. 2009). Furthermore, this same right is also protected by New York statute. N.Y. CIV. RIGHTS LAW § 12 (McKinney).

The right to an open trial is not absolute, however, but "may give way in certain cases to other rights or interests. . . . Such circumstances will be rare, however, and the balance of interests must be struck with special care." *Waller v. Georgia*, 467 U.S. 39, 45 (1984); *see Press-*

*Enterprise Co. v. Sup. Ct. of Cal.,* 464 U.S. 501 (1984). The *Waller* court identified the following four-factors a court should consider before limiting a criminal defendant's Sixth Amendment right to a public trial over his or her objections:

> "[(1)][T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [(2)] the closure must be no broader than necessary to protect that interest, [(3)] the trial court must consider reasonable alternatives to closing the proceeding, and [(4)] it must make findings adequate to support the closure."

*Waller v. Georgia*, 467 U.S. 39, 48 (1984).[6] Denying the accused a public trial without satisfying all four prongs of the test is a violation of the Sixth Amendment. *Id*. at 46–48. New York State law also provides for a co-extensive right to a public trial, which is "fundamental, [but] is not absolute; a trial court may exercise its discretion to close a courtroom, but must do so 'sparingly . . . and then, only when unusual circumstances necessitate it.'" *People v. McGough,* 998 N.Y.S.2d 232, 236 (N.Y. App. Div. 2014) (citing *People v. Hinton,* 31 N.Y.2d 1, 76 (1972), *cert. denied,* 410 U.S. 911 (1973); *People v. Jones*, 96 N.Y.2d 213, 216 (2001)). The trial court has a duty to consider reasonable alternatives to *complete* closure, even *sua sponte,* if the parties fail to suggest reasonable alternatives. *Presley v. Georgia,* 558 U.S 209, 214 (2010). However, once a narrow closure is identified and complete closure is set aside, the court need not consider further reasonable alternatives. *Bowden v. Keane,* 237 F.3d 125, 131 (2d Cir. 2001). On review in a federal habeas petition, this Court must give deference to the state court proceedings and review for harmless error. *Carson v. Fischer*, 317 F. Supp. 2d 197, 204 (E.D.N.Y. 2004), *aff'd*,

---

[6] Although the facts in *Waller* specifically dealt with a suppression hearing, the Second Circuit considers this analysis as relevant for all courtroom closures, in particular because *Waller* itself relies on decisions addressing closures in a variety of proceedings. *See Rodriguez v. Miller*, 537 F.3d 102 (2d Cir. 2008); *Waller v. Georgia*, 467 U.S. 39, 44–48 (1984).

421 F.3d 83 (2d Cir. 2005) (discussing at length the justification for harmless error on habeas review of an alleged violation of the right to public trial).

Upon full review of the prior proceedings this Court finds that the state did not violate *Waller* or McGough's right to a public trial by closing the court, and excluding Petitioner's family and friends, during T.V.'s testimony. The decision to close the court was intended to protect the overriding interest of the witness' valid fear of harm to himself and his younger brother, both minors. *Accord Moss v. Colvin,* 845 F.3d 516, 520–21 (2d Cir. 2017) (finding that the witness' safety is an overriding interest). The closure was limited to the testimony of a single witness, rather than the full proceeding; and limited to a certain topic, for which he was the only witness available to testify. *Accord States v. Ledee*, 762 F.3d 224, 230 (2d Cir. 2014) (finding that closure during testimony of a single witness was not too broad even though it was a complete bar to the general public, including defendant's parents); but *cf, People v. Kin Kan*, 574 N.E.2d 1042 (N.Y. 1991) (finding that the closure of the court including the exclusion of defendant's family during the testimony of an accomplice cooperating witness violated defendant's right to a public trial, given that the witness had previously testified in front of defendant's parents, had testified that he did not fear defendant's family, and defendant had a greater interest in having her family present because of a language barrier).

During the hearing on request for closure, the court also considered counsel's narrower alternative seeking that only McGough's mother remain in the court room. Docket No. 7-4 (Hr'g Tr.) 57:5–18. Importantly, the court must consider how the witness is subjectively affected by testifying in a public or private court room. *U.S. v. Ledee*, 762 F.3d 224, (2d Cir. 2014) (affirming the "'district court's common sense conclusion' that [the witness] would likely not be

able to communicate effectively in an open courtroom"); *U.S. v. Doe,* 63 F.3d 121, 129–31 (2d Cir. 1995) (opining that "in some circumstances it might be within a district court's discretion to grant closure without evidence of a direct threat or other evidence corroborating a defendant's subjective fears."). It is not relevant that McGough's mother was not calling T.V. a snitch, because T.V. was subjectively and genuinely fearful of testifying in public but not in private. Furthermore, McGough was not a minor, but twenty-one years old at the time of trial, and wanted his mother in the court room for moral support only. There is no allegation or argument that McGough required his mother's presence based on his mental capacity or any other reason. Finally, the court provided reasoned support in reviewing the trial court's closure and finding that there was no violation. *See People v. McGough,* 998 N.Y.S.2d 232, 236 (N.Y. App. Div. 2014).

For the foregoing reasons, it cannot be said that this decision was contrary to Supreme Court law, or an unreasonablelication of Supreme Court law; nor can reasonable minds differ about this determination. Therefore, Petitioner's claim regarding a violation of his right to public trial is **DENIED** with prejudice.

    b.    **Right to Effective Assistance of Counsel**

On collateral appeal, the County Court evaluating Petitioner's Motion to Vacate summarized the following facts pertinent to Plaintiff's ineffective assistance of counsel claim:

> "On the day of the execution of the search warrant, defendant's father, Jeffrey McGough was taken into custody and gave a written statement to the police. . . . The statement in pertinent part states:
>
> 'I saw the police coming around the corner and I figured they were coming to my house at 1610 Bradley Street. I grabbed a loaded .357 revolver and threw it in my son Andre's closet in his bedroom. I was running around my house and I thought I threw what I thought was a .40 semi-automatic black handgun in the bedroom where by [*sic*] son Kevin was. I do not know about a .380 handgun or any handgun that

> was in the hamper. The handgun that I thought was a .40 might have been a 9mm and it was taken apart a little bit. The .357 and 9mm were bought by me on the streets. I had the .357 for a few years and the 9mm I had for a few months now. My son Kevin does not touch these guns because they are mine. There are several shotguns and rifles in my house and I have these for hunting.' . . .
> Defendant's father testified at the hearing consistently with this statement. Testimony at the hearing by defendant's mother, father and defendant's trial attorney demonstrated that defense counsel was aware of this statement but did not speak to Jeffrey McGough regarding this statement. At the time of defendant's prosecution, Jeffrey McGough had federal charges pending. Defense counsel did not speak with Jeffrey McGough's defense counsel regarding this statement. . . Defendant'[s] trial attorney testified at the hearing that he did not believe that calling Jeffrey McGough at trial would be helpful to the defendant. [Counsel] indicated that he did not believe [Jeffrey McGough] would have presented as a credible witness and that could have damaged defendant's case."

Docket 7-2 at 92.

The County Court held an adversarial evidentiary hearing to evaluate this claim, during which Deborah Ham, Petitioner's mother, and Jeffery McGough, Petitioner's father both testified. After the attorney-client privilege was waived, Stephen Rockmacher, Petitioner's trial counsel also testified, but Petitioner neither testified during his trial nor during the evidentiary hearing.

Petitioner claims that he was denied the right to effective assistance of counsel and a fair trial, because his counsel failed "to investigate and present a witness with exculpatory testimony;" the witness was his father Jeffrey McGough. Docket No. 1 at 8. Petitioner contends that Rockmacher's "refusal even to interview a witness with potentially exculpatory information" constitutes deficient performance. Docket No. 8 at 6. Petitioner's counsel also asserts that he did not acquiesce in this decision but "repeatedly asked defense counsel" to call the witness. Docket

No. 8 at 8. Finally, Petitioner argues that Jeffrey's statement "provided crucial evidence that would have almost certainly created a basis for reasonable doubt at [Petitioner's] trial." *Id.*

Respondent disagrees and asserts that "[Rockmacher] had numerous reasons to doubt the veracity of" Jeffery's statement, including his criminal history and lack of other corroborating testimony. Docket No. 6-1 at 19–20. Furthermore, Respondent argues that the statement claims responsibility for only two but not all of the weapons with which Petitioner was charged with constructive possession and thus, does not fully exonerate Petitioner. Docket No. 6-1 at 20–21. Finally, Respondent asserts that Petitioner "acquiesced in [Rockmacher's] decision not to call Jeffrey as a defense witness" which "is fatal to his claim that counsel was ineffective." Docket No. 6-1 at 21.

The U.S. Constitution provides, "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the assistance of counsel for his defense." U.S. CONST., Amend. VI. Likewise the New York Constitution provides for criminal defendants' right to competent legal counsel, and the County Court evaluated the ineffective assistance claim under New York law, which is a more protective standard. *See* N.Y. CONST. art. I, § 6; *Rosario v. Ercole*, 601 F.3d 118, 123–26 (2d Cir. 2010) (acknowledging that although the New York constitutional right to effective assistance of counsel and that of the U.S. Constitution are different, New York's standard is even more protective than *Strickland*.). The Supreme Court explained that in order to successfully bring an ineffective assistance of counsel claim a defendant must show that (1) his counsel's performance was deficient; and (2) the deficiency prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). This test is "rigorous" *Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001), and "highly demanding" *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

13

Whether performance is deficient considers whether "counsel's representation . . . fall[s] 'below an objective standard of reasonableness.'" *Chrysler v. Guiney*, 806 F.3d 104, 123 (2d Cir. 2015) (quoting *Strickland,* 466 U.S. at 688). "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. If there is reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper,* 132 S. Ct. 1376, 1385–86 (2012); *Glover v. United States,* 531 U.S. 198, 203–04 (2001); *Williams v. Taylor,* 529 U.S. 362, 393–95 (2000). Only in "the exceedingly rare and exceptional case" will there be a finding that "the state court's decision involved an 'unreasonable application' of *Strickland.*" *Rivas v. Fischer*, 780 F.3d 529, 550 (2d Cir. 2015) (finding that counsel's failure to further investigate an expert witness' change in testimony with regard to the time of death, a time during which defendant had no alibi) (citing 28 U.S.C. § 2254(d). The Petitioner cannot merely speculate as to how counsel might have executed a different trial strategy. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Ultimately, the Petitioner bears the burden of proof to overcome the strong presumption that counsel acted reasonably and that counsel's "performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Id.*; *see also, Garner v. Lee*, 908 F.3d 845, 865 (2d Cir. 2018), *cert. denied,* 139 S. Ct. 1608 (2019) (citing *Waiters v. Lee*, 857 F.3d 466, 479 (2d Cir.), *cert. denied sub nom. Waiters v. Griffin*, 138 S. Ct. 385 (2017)).

In a federal habeas proceeding reviewing an ineffective assistance of counsel claim:

> "The question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' And, because the *Strickland* standard is a general

> standard, a state court has even more latitude to reasonably
> determine that a defendant has not satisfied that standard."

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *accord Waiters* at 478. An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails one); *see also Waiters*, 857 F.3d at 478–79 ("But, as the Supreme Court explained in *Strickland* itself, 'the object of an ineffectiveness claim is not to grade counsel's performance' so that 'if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'") (quoting *Strickland,* 466 U.S. at 697).

There is good reason to find that Rockmacher's performance was not deficient. Rockmacher considered objective information by reviewing Jeffrey's affidavit and "rap sheet." He assessed the statement's credibility on its face, and correctly deduced that the statement itself is not completely exculpatory. Jeffrey only takes responsibility for two of the six firearms identified in the revised indictment. Docket No. 7 at 9–15, 67–68. Also, there was testimony at trial showing that "the [Petitioner] had been involved in a gang related dispute and on the day [Petitioner] allegedly shot at a car, he and several of his family members were on the front porch of their residence with weapons." Docket No. 7-2 at 93. The County Court correctly concluded that because Petitioner was charged with and convicted of constructive possession rather than exclusive possession of the weapons, Jeffrey's statement claiming, "ownership of the [two weapons] would not have exonerated the [Petitioner]." *Id*.

Furthermore, Jeffery's statement is undermined significantly by the lack of any corroborating witnesses, despite the fact that several family members were in the house on the

15

morning of the search. Even Petitioner did not testify that the guns were his father's or that the statement was true, neither during the trial nor the evidentiary hearing on Motion to Vacate. Furthermore, Jeffrey's credibility is impaired in part, by a reasonable interpretation that this is a father just trying to protect his son. Given N.Y. Crim. Proc. Law § 60.40(1), Jeffrey's lengthy prior criminal history would have been ripe for cross-examination and most certainly revealed to the jury. Relying on this information as demonstrated by Rockmacher's testimony, suggest that "counsel's choices were [] the result of a 'conscious, reasonably informed decision made by an attorney with an eye to benefitting his client.'" *Greiner v. Wells*, 417 F.3d 305, 325 (2d Cir. 2005).

Additionally, even if Rockmacher had tried to meet with Jeffrey, the County Court correctly noted that "[Rockmacher] could not have spoken to [Jeffrey] without his attorney's consent. It is also safe to assume that any attorney would not have permitted such a conversation to occur because of the risk of [Jeffrey] making further incriminating statements while charges were pending." Docket 7-2 at 92. Although, the Second Circuit has held that failure to interview a potential witness in certain circumstances constitutes deficient performance. *See Pavel v. Hollins*, 261 F.3d 210, 221 (2d Cir. 2001); *accord United States v. Thornhill,* 34 F. Supp. 3d 334 (S.D.N.Y. 2014), *aff'd*, 667 F. App'x 310 (2d Cir. 2016); but *cf. Samuels v. Bennett*, No. 03 CIV. 2340BSJFM, 2009 WL 2516850, at *23 (S.D.N.Y. Aug. 17, 2009). Given the information Rockmacher had at that time, he made a reasonable strategy decision when he determined that the introduction of the statement could not have helped Petitioner's case. Docket 7-6 at 20:22-21:2. The County Court reasonably determined that there were legitimate concerns regarding

Jeffrey's credibility as a witness and thus Rockmacher's decision not to interview or call Jeffrey as a witness was not "ineffective assistance."

Moreover, even if counsel's failure were deficient, this deficiency must also have caused prejudice in order to constitute ineffective assistance of counsel. The County Court's rejection of Petitioner's claim for ineffective assistance of counsel is furthermore reasonable and fully supported by the record, because Petitioner cannot escape that this error, if any, did not cause prejudice. The County Court correctly noted that Jeffrey's statement "did not fully exonerate [Petitioner] and, in some regard, may have incriminated him." Docket No. 7-2 at 93. Jeffery's statement only takes responsibility for the .357 caliber identified in Count four and the 9mm semi-automatic pistol identified in Count six but not *all* the weapons for which Petitioner was charged with constructively possessing. In fact, the statement could be understood to specifically disclaim responsibility for the .380 caliber gun and the semi-automatic pistol that was in the laundry basket, which was located next to Petitioner at the time of his arrest. The County Court reasonably found that Jeffrey's statement "may have influenced the jury regarding the two guns he claimed to have hidden in defendant's room. However, it would also have assisted the jury with finding the defendant guilty of possession of the .380 handgun and the 9mm weapon." Docket No. 7-2 at 92.

Importantly, Petitioner was sentenced to fifteen years of incarceration plus five years of supervised release for each of the five charges for criminal possession of a weapon, to be served concurrently. Docket 7 at 51–52. Thus, even if Jeffrey's testimony regarding two of the weapons had been heard and believed by the jury, Petitioner's sentence would not have been altered, and thus there is no prejudice under *Strickland*. Because of "[t]he Supreme Court's continued

acceptance . . . of the concurrent sentence doctrine, which allows courts . . . to avoid reaching the merits of a claim altogether in the presence of identical concurrent sentences. . . it can hardly be a clearly established principle of Supreme Court jurisprudence that the collateral consequences of a conviction alone suffice to establish *Strickland* prejudice." *Tavarez v. Larkin,* 814 F.3d 644, 649 (2d Cir. 2016) (rejecting petitioner's argument that on habeas review, "collateral consequences of conviction are sufficient to establish *Strickland* prejudice," although, acknowledging that *Ball v. United States,* 470 U.S 856, 864–65 (1985) "is suggestive" of the Supreme Court's position, it fails to clearly establish the proposition with respect to AEDPA review.)

Moreover, Petitioner's acquiescence to Rockmacher's strategy not to call Jeffrey as a witness severely damages his claim for ineffective assistance of counsel. Although, Petitioner's counsel argues that McGough "repeatedly asked defense counsel" to call Jeffrey to testify, this argument lacks support. Rockmacher provided uncontroverted testimony that after about two meetings with Petitioner preparing for trial, Petitioner stopped asking Rockmacher about calling his father as a witness. Docket 7-6 at 20:8-21; *see McEathron v. Martuzcello*, 14-CV-00218, 2017 U.S. Dist. LEXIS 82178, at 15 (W.D.N.Y. May 30, 2017); *accord Curkendall v. Mazzuca,* 05-CV-688, 2008 U.S. Dist. LEXIS 124109, at *82 (W.D.N.Y. July 23, 2008) (citing *U.S. ex rel. Reid v. Richmond,* 295 F.2d 83, 89 (2d Cir. 1961); *Nunez v. Miller,* 00 Civ. 0966, 2001 U.S. Dist. LEXIS 26773, at *22 (E.D.N.Y. July 11, 2001).

Based on the foregoing, this Court cannot say that the County Court's decision was contrary to or an unreasonable application of Supreme Court law. Therefore, Petitioner's claim regarding a violation of his right to effective assistance of counsel is **DENIED** with prejudice.

## V. CONCLUSION AND ORDER

McGough is not entitled to relief on any ground raised in the Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** this Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(B); 2D CIR. R. 22.1.

The Clerk of the Court is directed to enter judgment accordingly.

Dated: July 2, 2019.

/s/ *James K. Singleton, Jr.*
JAMES K. SINGLETON, JR.
Senior United States District Judge
